IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 26-cv-0787-WJM-SBP

RICARDO MORENO SANTANA,

    Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden
of the Denver Contract Detention Facility, *et al.*,

    Respondents.

## ORDER GRANTING HABEAS CORPUS PETITION

Before the Court is Petitioner Ricardo Moreno Santana's Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("Petition"). (ECF No. 1.) Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility; George Valdez,[1] in his official capacity as Acting Field Office Director of the Aurora Field Office, U.S. Immigration and Customs Enforcement ("ICE"); Todd M. Lyons, in his official capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"); and Pamela Bondi, in her official capacity as Attorney General of the United States (collectively, "Respondents" or "the Government") filed a response. (ECF No. 8.) Moreno Santana filed a reply. (ECF No. 13.)

For the following reasons, the Petition is granted.

---

[1] The Petition originally named Robert Hagan as the Field Office Director of ICE's Aurora Field Office, for whom the Government substituted Valdez. (ECF No. 8 at 1.)

I.	BACKGROUND

Moreno Santana is a native and citizen of Mexico who has resided in the United States for over 20 years.  (ECF No. 1 at ¶¶ 3, 72.)  In December 2025, ICE apprehended Moreno Santana and initiated removal proceedings against him.  (*Id.* at ¶¶ 1, 4.)  Following his initial detention, Moreno Santana appeared before an Immigration Judge ("IJ") for a custody redetermination hearing on January 12, 2026.  (*Id.* at ¶ 6.)  The IJ concluded that Moreno Santana's detention was governed by 8 U.S.C. § 1226(a), found that he posed no flight risk or danger to the community, and ordered him released on a $5,000 bond.  (*Id.*)

Rather than immediately release Moreno Santana pursuant to the bond conditions ordered by the IJ, however, DHS appealed the IJ's bond decision to the Board of Immigration Appeals ("BIA") on January 20, 2026 and invoked the automatic 90-day stay provision at 8 C.F.R. § 1003.19(i)(2).  (*Id.* at ¶¶ 7–8; ECF No. 8 at 1–2.)  That regulation specifically provides that,

> In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board.  The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary.

8 C.F.R. § 1003.19(i)(2).

In the pending BIA appeal, the Government contends Moreno Santana is subject to mandatory detention under § 1225(b)(2)(A).  (ECF No. 8 at 2.)  The removal proceedings against Moreno Santana, including his application for cancellation of

2

removal, likewise remain pending in Immigration Court.  (ECF No. 1 at ¶ 5.)  The IJ has set an Individual Hearing for May 4, 2026.  (*Id.* at ¶ 9.)  Moreno Santana challenges his continued detention pending the Government's appeal to the BIA and notes that, without this Court's intervention, "he will have been detained for almost four months by the time of [his Individual Hearing], despite having been granted bond."  (*Id.*)

## II.    LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III.    ANALYSIS

The Court interprets the Petition to foremost challenge the Government's continued assertion on appeal that Moreno Santana is subject to mandatory detention under § 1225(b)(2)(A).  While the Court acknowledges that this statute is the driving force behind the Government's position on appeal before the BIA, it is undisputed that this statutory authority is not the basis for Moreno Santana's current detention.  As both

parties acknowledge, the Government is "detaining him solely on the basis of 8 C.F.R. § 1003.19(i)(2)." (ECF No. 13 at 6; *see also* ECF No. 8 at 2 ("Petitioner is currently detained under § 1226(a)—not § 1225(b)(2)(A).").) Moreno Santana points to no authority permitting the Court to issue what would essentially be an advisory opinion on the applicability of § 1225(b)(2)(A) in this case. Thus, the Court agrees with the Government that Moreno Santana's prospective challenge to a future ruling by the BIA that he is subject to mandatory detention under § 1225(b)(2)(A) is, at this time, not ripe.[2]

On the other hand, there is no dispute that Moreno Santana's due process challenge to the Government's invocation of the automatic stay regulation is properly before this Court. (ECF No. 1 at 22–23.)[3] And, as explained below, the Court agrees with Moreno Santana that the Government's application of 8 C.F.R. § 1003.19(i)(2) has violated his procedural due process rights. Accordingly, he must be immediately released.

As a threshold matter, the Court observes that the Government posits that a noncitizens' procedural due process rights end at the point they request bond from an IJ and have had the opportunity to appeal any adverse bond decision to the BIA. (*See*

---

[2] That said, the Government is clearly aware that the Court has already repeatedly weighed in on this issue. See *Temaj Lopez v. Baltasar,* 2026 WL 628199, at *1 (D. Colo. Mar. 6, 2026); *Singh v. Baltasar,* 2026 WL 601950, at *1 (D. Colo. Mar. 4, 2026); *Hernandez v. Baltazar,* 2026 WL 507518, at *1 (D. Colo. Feb. 24, 2026); *Fuentes Bonilla v. Baltazar,* 2026 WL 452365, at *1 (D. Colo. Feb. 18, 2026); *Alvarez Hernandez v. Baltazar,* 2026 WL 304362, at *1 (D. Colo. Feb. 5, 2026); *Garcia Abanil v. Baltazar,* ---- F. Supp. 3d ----, 2026 WL 100587, at *1 (D. Colo. Jan. 14, 2026); *Morales Lopez v. Baltazar,* 2026 WL 25161, at *1 (D. Colo. Jan. 5, 2026).

[3] The Government also interpreted the Petition to assert that the automatic stay regulation violated the Immigration and Nationality Act ("INA") and its implementing regulations. (ECF No. 8 at 3–4.) To the extent the Petition made such an argument, it appears Moreno Santana has abandoned it in his reply, in which the Court understands him to argue only that the automatic stay provision is violative of his due process rights. (ECF No. 13 at 3–7.)

ECF No. 8 at 5 ("The process for evaluating bond for aliens—the very process currently playing out before the BIA here—provides the requisite notice."); *see also id.* ("Petitioner has not shown that he is not receiving notice and opportunity to be heard as to bond, and he has thus not made out a procedural due process violation.").)  Contrary to this position, however, the Court concludes that the *Mathews v. Eldridge*, 424 U.S. 319 (1976) test properly governs this procedural due process challenge.

This is not a remarkable conclusion.  On the contrary, it is in keeping with several other court decisions, including in this District, that have applied the *Mathews* standard in immigration habeas cases.  *See Merchan-Pacheo v. Noem*, 2026 WL 88526, at *4 (D. Colo. Jan. 12, 2026) (thoroughly rejecting argument that the *Mathews* test does not apply in similar circumstances); *see also L.G. v. Choate*, 744 F. Supp. 3d 1172, 1181 (D. Colo. 2024) (applying *Mathews* in a similar context and observing that "Tenth Circuit precedent demonstrates that the *Mathews* test is appropriate when determining what process is constitutionally due"); *Vizguerra-Ramirez v. Baltazar*, 2025 WL 3653158, at *13 (D. Colo. Dec. 17, 2025) (applying *Mathews* in a similar context); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and noting that, "when considering due process challenges to [discretionary noncitizen detention,] other circuits . . . have applied the *Mathews* test"); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (applying *Mathews* test to section 1226(a) challenge); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (same); *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1185 (D. Minn. 2025).  Persuaded by this reasoning, the Court proceeds to apply the *Mathews* factors to this case.

Under *Mathews v. Eldridge*, courts must consider three factors when evaluating

whether a petitioner has made out a procedural due process violation: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors strongly support Moreno Santana's position that 8 C.F.R. § 1003.19(i)(2) violates his procedural due process rights. First, Moreno Santana's private interest in this case is beyond dispute: As a result of the automatic stay regulation, Moreno Santana has lost his freedom for several months—despite the fact that an IJ determined that he did not pose a risk of flight or danger sufficient to deny bond. A person's physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Vizguerra-Ramirez*, 2025 WL 3653158, at *13 (same); *Carlon v. Kramer*, 2025 WL 2624386, at *3 (D. Neb. Sept. 11, 2025) (same); *Velasco Lopez*, 978 F.3d 842, 851 (2d Cir. 2020) (finding, in assessing the first *Mathews* factor, that "[t]he deprivation [petitioner] experienced while incarcerated was, on any calculus, substantial. He was locked up in jail. He could not maintain employment or see his family or friends or others outside normal visiting hours."); *Hamdi*, 542 U.S. at 529 (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the detention); *Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free

6

from detention "lies at the heart of the liberty that [the Due Process] Clause protects").

Moreno Santana's loss of freedom comes at significant cost. Despite not being accused of committing any crime, the Government is detaining Moreno Santana in a facility that the undersigned has already found "strongly resemble[s] penal confinement." *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 940 (D. Colo. 2025). Moreover, as a result of the automatic stay regulation, the Government has separated Moreno Santana from his family. (ECF No. 1 at ¶ 91.) Given all this, the first *Mathews* factor strongly supports Moreno Santana's procedural due process claim.

Second, the likelihood that the Government is erroneously depriving Moreno Santana of his right to freedom is especially high in these circumstances. Indeed, "the only individuals subject to the automatic stay are those who, by definition, prevailed at their bond hearing." *Carlon*, 2025 WL 2624386, at *3; *Gunaydin*, 784 F. Supp. 3d at 1187 (same). Despite prevailing at his bond hearing, the automatic stay provision allowed the Government to effectively disregard the IJ's custody determination and deprive Moreno Santana of his liberty anyway. Put another way, "the automatic stay regulation empowers ICE—the losing party in the bond hearing—to unilaterally override the decision of the [Immigration] Judge and keep the noncitizen detained pending appeal. Such a rule allows the government to bypass its burden of proof at bond hearings and usurp the role of the Immigration Judge." *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 32 (D. Mass. 2025)*.*

"Other courts considering the automatic stay provision have found this problematic as well." *Carlon*, 2025 WL 2624386, at *3; *Zavala v. Ridge*, 310 F. Supp. 2d 1071, 1077–78 (N.D. Cal. 2004) (recognizing that "[a] unilateral determination made

7

by the [Immigration and Naturalization] Service attorney that effectively overrules the reasoned decision of the Immigration Judge poses a serious risk of error" in that "it conflates the functions of adjudicator and prosecutor"); *Ashley v. Ridge*, 288 F. Supp. 2d 662, 668, 671 (D.N.J. 2003) (explaining that the automatic stay regulation produces a "patently unfair situation by 'tak[ing] the stay decision out of the hands of the judges altogether and giv[ing] it to the prosecutor who has by definition failed to persuade a judge in an adversary hearing that detention is justified'" and "renders the Immigration Judge's bail determination an empty gesture").

Nevertheless, the Government maintains that "further review by the BIA will enhance, not reduce, the accuracy of a bond decision, and this factor thus does not weigh in favor of a due process violation." (ECF No. 8 at 7.) The Government confuses the issue. It does not need the automatic stay provision to challenge the IJ's bond determination before the BIA. It can simply appeal the IJ's bond determination while Moreno Santana enjoys his freedom as that appellate procedure plays out.

Moreover, the Government's argument "frames the concern for accuracy solely in [its own] favor . . . ." *Rivas*, 2026 WL 444732, at *3. "[T]he traditional due process concern with accuracy . . . is meant to protect *the individual interest*." *Benham v. Ledbetter*, 785 F.2d 1480, 1487 (11th Cir. 1986) (emphasis added); *see also Speiser v. Randall*, 357 U.S. 513, 525–26 (1958) ("Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of producing a sufficiency of proof in the first instance . . . .").

Frankly, the Court is far more concerned that Moreno Santana will be

erroneously detained pending appeal than by the prospect of the IJ's decision being reversed while he is released on bond.  See *Rivas*, 2026 WL 444732, at * 3 ("In matters such as this, the concern for accuracy is that individuals will erroneously be deprived of their liberty—the paramount interest at stake—as opposed to a concern with the accuracy of an IJ's determination that an individual is not a danger or a flight risk.").

Perhaps of greatest concern, "[t]he automatic stay regulation also inverts the traditional burdens and standards governing requests for stays pending appeal." *Sampiao*, 799 F. Supp. 3d at 32.  Specifically, the automatic stay provision gives the Government *carte blanche* to keep noncitizens detained regardless of the particular circumstances of a given case.  "Ordinarily, to obtain a stay of a judge's order requires a party to, *inter alia*, make 'a strong showing' that it is likely to succeed on the merits of its challenge to that order." *Maza v. Hyde*, 807 F. Supp. 3d 42, 49 (D. Mass. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).  By contrast, the automatic stay regulation "turns these well-established procedural principles on their heads and carries a significant risk of erroneous deprivation." *Gunaydin*, 784 F. Supp. 3d at 1187; see also *Vizguerra-Ramirez*, 2025 WL 3653158, at *14 (finding that these circumstances unfairly put petitioners "in the more difficult position of proving a negative—that is, proving that [they are] neither a flight risk nor a danger to the community").  "By flipping the traditional rules governing requests to stay pending appeal, the automatic stay regulation invites significant risk of error in decisions that deprive individuals of their liberty." *Sampiao*, 799 F. Supp. 3d at 33.

What's more, the automatic stay regulation is not the Government's only available tool for keeping a noncitizen detained after an IJ's bond determination: The

Government may also "request a discretionary emergency stay from the BIA." *Carlon*, 2025 WL 2624386, at *4; *see also* 8 C.F.R. § 1003.10(i)(1) (granting BIA discretionary stay authority); *Gunaydin*, 784 F. Supp. 3d at 1190 ("Respondents' interest in preserving the automatic stay regulation is almost entirely, if not entirely, reduced by the mechanisms already in place for requesting an emergency stay from the BIA."). "This procedure, at minimum, mitigates the concern about DHS usurping the neutral adjudicatory role of an Immigration Judge and provides additional safeguards that the automatic stay provision lacks." *Merchan-Pacheo*, 2026 WL 88526, at *15. Given all this, the second *Mathews* factor favors Moreno Santana as well.

Third and finally, the Government does not have a significant interest in keeping Moreno Santana detained by way of the automatic stay regulation. The Government suggests that its interest in keeping Moreno Santana detained is strong because he may flee if released pending appeal, which "could render the review process illusory." (ECF No. 8 at 7.) But the Government's stated concern is misplaced because an IJ has already found that Moreno Santana does not pose a flight risk sufficient to deny bond. As such, the Government's stated interest here is unsubstantiated and based on nothing more than mere conjecture.

For all these reasons, the Court concludes, based on the *Mathews* factors, that Moreno Santana has established that the Government's use of the automatic stay regulation offends his procedural due process rights.[4] Accordingly, he is entitled to immediate release, upon the posting of bond, from his unlawful detention.

---

[4] Given the Court's conclusion that 8 C.F.R. § 1003.19(i)(2) violates Moreno Santana's procedural due process rights, it need not consider whether the automatic stay regulation also violates Moreno Santana's substantive due process rights.

## IV.    CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. Magistrate Judge Susan B. Prose's Order to Show Cause (ECF No. 4) is MADE ABSOLUTE and the Petition (ECF No. 1) is GRANTED;

2. The Court GRANTS this relief pursuant to Claim III of the Petition, and does not reach the other claims asserted by Moreno Santana;

3. **By no later than this Sunday, March 15, 2026**, the Government shall IMMEDIATELY RELEASE Moreno Santana, upon the posting of the bond issued by the IJ, along with all his personal belongings;

4. No onerous conditions of release shall be unilaterally imposed by Respondents on Moreno Santana, including without limitation mandating that he wear GPS monitoring, submit to mandatory reporting, or have his movements otherwise restricted;

5. Respondents shall continue to be ENJOINED from removing or transferring, or causing to remove or transfer, Moreno Santana from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6. Should Moreno Santana believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **April 10, 2026**. The Government shall file a response by no later than **May 1, 2026**, and Petitioner shall file a reply by no later than **May 15, 2026**; and

7.      Judgment shall enter in Moreno Santana's favor and against the Government on **March 27, 2026,** UNLESS prior thereto the Court is informed that the Government has failed to fully and timely comply with the terms of this Order.

Dated this 13th day of March, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge